## JOHNSON *v.* OCEAN S. S. Co.[1]

*(District Court, E. D. New York.* September 30, 1890.)

DEMURRAGE—CARGO STORED ON LIGHTERS—EVIDENCE.

The Ocean Steam-Ship Company brought cotton to New York under through bills of lading, by which the company undertook to convey the cotton to New York, and deliver it along-side certain designated foreign steam-ship lines. At one time the docks of the company became clogged with cotton, and the company shipped it on lighters, to be transported to the foreign lines, and held in the lighters until these steamers were ready to receive it. The lighters being in consequence delayed, their owner brought this suit for demurrage, alleging a special agreement by the Ocean Steam-Ship Company to pay demurrage for the time the cotton remained on the lighters. The answer alleged an agreement that the Ocean Steam-Ship Company was in no case to be responsible for the demurrage of the libelant's lighters, but that the same was to be collected from the foreign steam-ships. *Held,* that the steam-ship company was liable for demurrage.

In Admiralty.   Suit for demurrage.
*Alexander & Ash,* for libelant.
*Hoadly, Lauterbach & Johnson,* for respondent.

BENEDICT, J.   This is an action brought by the owner and charterer of certain lighters to recover of the Ocean Steam-Ship Company the sum, of $1,490, alleged to be due the libelant for the detention of his lighters under the following circumstances:   The Ocean Steam-Ship Company was a large carrier of cotton shipped in Savannah for New York under through bills of lading, by which the Ocean Steam-Ship Company undertook to convey the cotton to New York, and there to deliver it along-side the steam-ships of certain designated foreign lines for transportation abroad.   In October, 1888, the docks of the Ocean Steam-Ship Company in New York became clogged with cotton owing to the fact that cotton arrived from Savannah faster than the foreign steamers were able to receive it.   To relieve their docks, the Ocean Steam-Ship Company shipped quantities of this cotton on lighters, to be taken in the lighters to the piers of the proper foreign steam-ships and there to be held in the lighters until steamers were able to take it.   The result was a detention of the lighters at the piers of the foreign steam-ships, extending from three to ten days each.   Among the lighters so used were lighters belonging to the libelant, and for this detention of some of these lighters the libelant in this action seeks to hold the Ocean Steam-Ship Company liable.   The libel sets forth a special agreement between the libelant and the Ocean Steam-Ship Company, as follows:

"To carry and transport for the Ocean Steam-Ship Company this cotton to and along-side certain steam-ships in said port, and to deliver the same to the

[1] Reported by Edward G. Benedict, Esq., of the New York bar.
v.43F.no.11—51

said steam-ships, and further to store and keep said cargoes on board of said lighters for the Ocean Steam-Ship Company until the steam-ships were ready to receive the cargoes, and to pay demurrage according to the custom of the port for the time such cargoes, respectively, were kept and stored on such lighters until said steam-ships were ready and did receive the same."

The answer denies the contract set forth in the libel, and sets up by way of defense an agreement between the libelant and the company that the Ocean Steam-Ship Company was in no case to be responsible for the demurrage of the libelant's lighters.

The testimony presents a conflict of testimony in regard to the agreement set up in the libel, as well as in regard to the agreement set up in the answer. The libelant testifies to the making of the agreement set forth in the libel with Mr. Walker, the agent of the steam-ship company. Mr. Walker denies having made any such agreement, and asserts that the agreement was that the libelant was to look to the foreign steam-ship lines for the detention of his lighters, and not to the Ocean Steam-Ship Company. The testimony of the libelant in regard to the contract set up in the libel is, however, corroborated by the testimony of another witness, and the probabilities of the case seem to me to favor the position of the libelant. It will be noticed that the libelant had no contract with the foreign steam-ship lines. The cotton delivered from the libelant's lighters to the foreign steamers was received by such steamers from the Ocean Steam-Ship Company in pursuance of contracts made with the Ocean Steam-Ship Company, by which that company contracted to deliver the cotton to them. It is not seen, therefore, how the foreign steamships could be held liable to the libelant for the demurrage in question. This being so, such an agreement as the defendant sets up would be equivalent to an abandonment by the libelant of any claim to demurrage. Inasmuch as the detention amounted to between $5,000 and $8,000, and was anticipated by the libelant when he took the cotton on board his lighters, it seems highly improbable that he would make an agreement which would deprive him of any compensation for such detention. Furthermore, the evidence shows that bills for this demurrage, made out in each case against the Ocean Steam-Ship Company, were regularly delivered to that company by the libelant, and the same were not questioned by the Ocean Steam-Ship Company, nor any point made at the time in regard to their liability therefor. It is true that the agent of the steam-ship company testifies that these bills were made out in this form for the accommodation of the libelant, and in order to facilitate the collection of the demurrage from the foreign steam-ship lines by the Ocean Steam-Ship Company, as agent of the libelant; but this is also denied by the libelant's witnesses. An arrangement so anomalous requires a clear preponderance of testimony to justify a finding that it existed. Still further, it appears that the Ocean Steam-Ship Company collected of the foreign steam-ships demurrage for some of the lighters herein sued for, which sums were not paid to the libelant by the Ocean Steam-Ship Company, nor was he informed of the fact of such collection until after this suit was brought. This circumstance does not accord with the statement

that the defendant was to collect the demurrage from the foreign steam-ship lines as the agent of the libelant. Had such been the case, the moneys would have been at once paid over to the libelant. Still further, the agent of the steam-ship company, as I understand his testimony, urged the foreign steam-ship lines to pay the Ocean Steam-Ship Company for the detention of the lighters, upon the ground that the Ocean Steam-Ship Company was liable therefor to the libelant. I have not overlooked the evidence which shows that, with regard to some similar bills not here sued for, the Ocean Steam-Ship Company accepted of the foreign lines 50 per cent. of the amount of the libelant's bill after having obtained the libelant's consent to receive that amount for them in full of the bill. But this fact does not seem to me to be inconsistent with the testimony of the libelant.

Looking at all the circumstances, my opinion is that the weight of the testimony is with the libelant, and that he is entitled to a decree. The parties can no doubt agree upon the amount. If not, let a reference be had.